## THEODORE SCHROEDER *v.* EDWARD P. PATERSON.

A vendor, who by his contract of sale vests an absolute title in the property sold in the vendee, has no lien in equity upon such property, by reason of an unpaid mortgage given by him upon other property, to secure to *his* vendor of a portion of the property sold, the price of that portion, although the vendee has, by agreement, been substituted in his place for the payment of the price of that portion of the property sold to him.

BILL IN EQUITY to enforce a supposed lien of the plaintiff upon a steam engine, boilers, and shafting in the Manchester Print Works, in Smithfield, or to have partition of the same as a part-owner, under a statute of this state, to which a demurrer was filed for want of equity; a special cause of demurrer having been waived at the hearing.

The bill in substance stated, that in August, 1855, the plaintiff entered into a contract with the firm of Thurston, Gardner & Co., to build for him, for use in the Manchester Print Works which he then contemplated operating, a steam engine, boilers, and shafting, in which, after arranging the price and terms of payment, it was stipulated, that as security for the payment of the price, Thurston, Gardner & Co. were to remain the owners of the steam engine, &c. after the same were placed in the works, until payment for the same was completely made; and that, as further security for the payment of the price of the steam engine, &c. the plaintiff executed to Thurston, Gardner & Co. a mortgage upon certain copper printing rollers to him belonging; that in the November following, and before any payment had been made by the plaintiff to Thurston, Gardner & Co. another contract was entered into between the plaintiff, the defendant, and Thurston, Gardner & Co.; by virtue of which the defendant was to take the plaintiff's place in the contract with Thurston, Gardner & Co. for the purchase of the steam-engine, &c.; it having been arranged that the print works were to be operated by the defendant, and that the plaintiff was to be employed by him therein as a manager, at a reasonable compensation for his services. The substituted contract stipulated, that the defendant was to make the cash payment, and give his notes for the balance of the price of the steam engine, &c.; but

varied from the original contract in this, that it expressly provided that upon making the cash payment and giving his notes, " the engine, shafting, pullies, and pipes, and all other articles furnished by them (Thurston, Gardner & Co.) in completing the same, together with the value of all the labor bestowed upon the same, *shall be the property of the said Paterson,* from the time of the delivery thereof, upon the said works, and the performance of the said labor." It was further expressly stipulated in the new contract, that the mortgage given to Thurston, Gardner & Co. by the plaintiff to secure the fulfilment of the original contract with them, was to be held by them as security for the performance by the defendant of the substituted contract, " and for the payment of all notes and other paper which may be given by him to the said Thurston, Gardner & Co. under the same." The bill further showed, that between the dates of the two contracts above set forth, to wit, in October, 1855, the plaintiff, who held the print works under an agreement with one Smith, the owner of them, by virtue of which he was to occupy and have a right to purchase them upon certain agreed terms, leased to the defendant the works for one year, with the right of renewal in either party upon the same terms for another year, and in the lease expressly stipulated, " that all the fixtures or machinery which the said Paterson may place or cause to be placed in said buildings shall remain the property of the said Paterson, or of the party placing them there, as provided in said Smith's agreement, and he or they shall have the privilege of removing the same, according to the terms and conditions thereof." The concluding statements of the bill were, that under the above agreements, Thurston, Gardner & Co. delivered the steam engine &c. upon the works, and received the cash payment stipulated for the same from the defendant, and his promissory notes for the balance of the price of the same; but that the defendant had failed to pay his notes, and had become insolvent, leaving the plaintiff's copper rollers subject to Thurston, Gardner & Co. as security for the same under the mortgage aforesaid; which the bill supposed, either gave the plaintiff a lien on the steam engine, &c. to the value of the copper rollers mortgaged, or constituted him a part-owner of the same in the proportion of

that value to the value of the steam engine, &c. and thus entitled him to partition of the same under the statute.

The case was shortly argued by *Farnsworth* in support of the demurrer, and by *Cozzens* in support of the bill; the latter of whom quoted the cases of *Hatcher* v. *Hatcher*, 1 Randolph, 53; and *Hays* v. *Wood*, 4 ibid. 272.

AMES, C. J.    The plaintiff's title to relief, questioned by the demurrer, depends upon whether he is, upon the facts stated in his bill, a joint owner of the steam engine, &c. described in it, and so entitled to partition under the statute of this state, or if not, whether he has a lien upon the same, which equity calls upon us to recognize and enforce.

His joint ownership seems to us to be negatived by the express terms of the contract of November, 1855, entered into between the defendant, Thurston, Gardner & Co. and himself, which stipulates, that upon the defendant's making the cash payment and giving his notes for the price of the steam engine, shafting, &c. and labor on the same, the same " *shall be the property of the said Paterson,* from the time of the delivery thereof upon the said works and the performance of the said labor." The bill states that the defendant did make the cash payment towards, and give his notes for the balance of, the price of the steam engine, &c., and that they were delivered upon the works; and from these facts, coupled with the above words of the contract designed to mark out the rights of all parties in the property which formed the subject of it, we do not see what vestige of interest in the property is left in the plaintiff. We know of no legal machinery, by the operation of which, one who secures the price of a purchase by a mortgage of his property becomes a joint owner with the purchaser, especially, when, as in this case, it is stipulated that the property, the price of which is thus secured, is to be vested in the purchaser.    This disposes of the claim of the bill to equitable partition.

Next, does the bill show any lien on this property in the plaintiff, which the court can declare and enforce ?

It is not pretended that the agreements set forth in the bill give any lien by express terms to the plaintiff; but the court is asked to imply a lien in his favor on the property in question,

because he has mortgaged some other property of his to secure a portion of the price of this? Upon what principle does such a fact give a lien in equity upon property, the title to which has, by the agreement of the claimant of the lien himself, absolutely vested in the purchaser? The plaintiff is neither a vendor of this property to, nor a copurchaser of it with the defendant. He was, it is true, an original contractor for it; but ceded all his interest under his contract to the defendant, who was in all respects to take his place; the person with whom the plaintiff contracted requiring a mortgage, given by the plaintiff, to remain as security for the performance of the contract by his substitute, as the condition of his personal exemption. He has actually paid nothing, and may never pay anything, towards the price of this steam engine and fixtures; but may, at this very moment, be contesting with one hand the right of Thurston, Gardner & Co. to his copper rollers under their mortgage upon them, whilst he stretches out the other for this lien, by virtue of it. The two cases cited from Randolph's Reports have no application to this. In *Hays* v. *Wood*, 4 Randolph, 272, the court held that one of two copurchasers of land who has paid more than his share of the purchase-money, has a lien on the land to the extent of his advance. As we have seen, the plaintiff in this case is no joint purchaser of the property in question, and if he were, he has not paid *more* than his copurchaser. He has *paid* nothing; all that has been paid has been paid by the defendant alone. *Hatcher* v. *Hatcher*, 1 Randolph, 53,—a note of which only we have been able to procure,—seems to have been the case of a surety in a bond for a deed of land, who, none of the purchase-money having been paid, went into a court of equity to subject the land to the payment of the purchase-money, in relief of himself as surety. By the usual terms of such a bond, the legal title is not to be conveyed to the purchaser until the purchase-money is paid; but remains, in the mean time, in the hands of the vendor, as a security for the purchase-money. The bill in that case was probably nothing more than a bill by the surety of the purchaser, against him and the vendor, to compel the latter to look to his lien on the land, before looking to the surety; and if so, was brought to administer a well-known equity. Thurston,

Gardner & Co. have reserved no lien on this steam engine and fixtures, to which this bill seeks to compel them to look before proceeding against the plaintiff's copper rollers, and indeed are not made parties to this bill. On the contrary, by the express terms of a contract to which this plaintiff himself was a party they waived the lien originally reserved by them upon it, and agreed, that upon delivery, the property should become the absolute property of the defendant.

The demurrer is sustained; and no notice of a motion to amend having been given, the bill must be dismissed with costs.